United States Court of Appeals,

Eleventh Circuit.

No. 96-6064.

Anita FARLEY, Plaintiff-Appellant,

v.

AMERICAN CAST IRON PIPE COMPANY, Defendant-Appellee,

Equal Employment Opportunity Commission, Movant.

June 30, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. 95-CV-PT-573-S), Robert B. Propst, Judge.

Before BIRCH, Circuit Judge, and HILL and FARRIS[*], Circuit Judges.

BIRCH, Circuit Judge:

This appeal requires that we examine the extent to which an employer's institution and implementation of an anti-sexual harassment policy insulates that employer from liability under Title VII of the Civil Rights Act of 1964 for hostile environment sexual harassment. The district court granted summary judgment in favor of the defendants on all claims. For the reasons that follow, we affirm the district court's order granting summary judgment and dismissing this action.

## I. BACKGROUND

Anita Farley was employed by American Cast Iron Pipe Company ("ACIPCO") as a dental assistant in 1987.[1] At the time Farley commenced her employment with ACIPCO, Dr. Thomas Gann worked as a dentist in the same clinic. According to Farley, Gann subjected her to unwelcome sexual advances and remarks from approximately November 1989 until May 1994. For instance, Farley testified that Gann communicated to her erotic dreams he had had about her; kissed her over her objections; told jokes of a sexual nature in her presence; made sexually explicit remarks about

---

[*]Honorable Jerome Farris, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]More specifically, Farley was hired to work in ACIPCO's on-site medical facility created to provide comprehensive health care services to ACIPCO employees.

her body; and deliberately caused her to trip and fall so that he could pick her up and spin her around. R2-41-42, 112-25. Farley clearly expressed to Gann that she considered his conduct to be unwelcome and inappropriate.

Two other female dental assistants, Tommy Castro and Teresa Hamby, also testified that Gann had engaged in what they deemed to be offensive behavior of a sexual nature. Hamby testified that Gann kissed her on two occasions; she further stated that she did not express to him that his advances were unwelcome. R2-44-14-17. Castro testified that Gann attempted to kiss her and press his body against hers, R2-57-44, 49, and that he continued this behavior even after she asked him to stop. *Id.* at 52. Castro also stated that she had seen Gann read *Playboy* magazine during office hours, *id.* at 21-23, and engage in offensive behavior on numerous occasions with Farley and "[e]very female in [the] department at one time or another." *Id.* at 53.

Gann was promoted to chief of dentistry on August 1, 1994. On September 6, 1994, Farley was scheduled to meet with Gann and the dentist to whom Farley was assigned, Dr. Faye Chambers, to discuss Farley's work performance. Prior to that meeting, Farley notified ACIPCO's employee representative, W.L. Morrow, of her concerns and allegations regarding Gann's behavior toward her. Morrow accompanied Farley to her meeting with Gann and Chambers. Morrow testified that both Gann and Chambers appeared to be nervous during the meeting. R2-43-17, 19. Farley testified that Gann and Chambers discussed with her at the meeting the need for her to schedule her personal doctor appointments at certain times of day. R2-41-51. Farley also testified that after Gann became chief of dentistry, he was more stringent with her than with other dental assistants in retaliation for her refusal to succumb to his sexual advances; specifically, Farley pointed to Gann's insistence that she schedule her personal doctor appointments early in the morning or late in the afternoon and his criticism that she was not attentive to returning patients' telephone calls. *Id.* at 55.

Following Farley's conversation with Morrow, Morrow notified Leann Barr, the Director of Human Resources, of Farley's allegations of sexual harassment. After meeting with Farley on September 9 to discuss these allegations, Barr and an Equal Employment Opportunity officer, Glenn Hicks, conducted an investigation on September 13 and 14, during which Barr and Hicks

interviewed Farley's and Gann's colleagues. In a written report, Barr and Hicks concluded that "[n]either Dr. Gann nor Anita Farley were totally truthful about the events in question." R2-32 at Exh. E-7. They further concluded that "while Dr. Gann may have engaged in inappropriate and unprofessional conduct, the confirmed incidents were not so severe or pervasive as to meet the legal definition of sexual harassment." *Id.* at 8. Barr and Hicks recommended that Gann apologize for his behavior, receive a written reprimand, and be removed from any supervisory responsibility. *Id.* ACIPCO accepted these recommendations. It is undisputed that Gann, who had been promoted to chief of dentistry in August, 1994, was demoted from this position following the investigation into Farley's charges of sexual harassment. ACIPCO's vice president and treasurer, John Cook, testified that Gann's salary and benefits also were reduced to a level consistent with the demotion in title. R2-58 (John Cook Aff.).

Farley did not accept the results of the investigation, refused to return to her job as a dental assistant in the clinic, and asked to be assigned to work elsewhere in ACIPCO's facility. On September 19, Farley was offered a three-week temporary assignment working an evening shift outside the dental department; Farley refused the assignment due to the hours. From September 19 until October 11, Farley was on leave without pay. R2-32-201. In November, Barr elicited and received two psychiatric evaluations concerning Farley's ability to continue to work in the dental department. One doctor assessed Farley as having a "borderline mental disorder," *id.* at 200, and suggested that she be assigned temporarily outside the dental department; the second evaluation noted that it likely would be inappropriate to ask Farley to return to the dental department. *Id.* at 209. Farley subsequently was offered two other jobs working outside the dental department which she again refused due to the hours required. Following the three weeks of leave without pay in September, 1994, Farley remained off work at full salary until February 21, 1995, at which time her employment with ACIPCO was terminated. In the termination letter, ACIPCO noted that Farley had been on leave with full pay for approximately five months but, during this time, had refused to accept any of the available jobs either outside or within the dental department. R2-32-211.

Farley filed the instant action pursuant to both Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e-2(a)(1), and Alabama law against both ACIPCO and Gann. In the complaint, Farley alleged that ACIPCO and Gann had subjected her to sexual harassment and a hostile work environment; retaliation for filing an internal complaint regarding the alleged harassment; and assault, battery, and invasion of privacy under state law. The parties later stipulated to dismiss the federal claims against Gann. In response to motions for summary judgment filed by both ACIPCO and Gann, the district court granted summary judgment in favor of both defendants and dismissed the federal action with prejudice and the state law claims without prejudice. In its memorandum opinion, the court found that (1) Farley had failed to show that ACIPCO could be held liable for *quid pro quo* sexual harassment; (2) Farley had failed to demonstrate that Gann's conduct was so pervasive as to charge ACIPCO with constructive knowledge of the harassment; (3) ACIPCO reacted promptly and effectively to Farley's complaint; and (4) Farley had failed to show that ACIPCO's legitimate reason for her termination was a pretext for retaliation. Having dismissed the federal claims, the court declined to exercise pendent jurisdiction over Farley's state law claims against Gann.[2]

## II. DISCUSSION

We review *de novo* the district court's order granting summary judgment. *See Earley v. Champion Int'l. Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, we must review the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). We review the district court's findings of fact under the clearly erroneous standard of review. *Pullman-Standard v. Swint,* 456 U.S. 273, 287-88, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

Title VII prohibits sexual harassment that is "sufficiently severe or pervasive "to alter the

---

[2]Farley does not challenge on appeal the district court's disposition of her state law claims.

conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)) (alterations in original). In a sexual harassment action, a plaintiff may establish a violation of Title VII by proving that the harassment either was directly linked to the grant or denial of an economic *quid pro quo* or created a hostile work environment. *Meritor,* 477 U.S. at 65-66, 106 S.Ct. at 2404-05. An employer may be held liable for *quid pro quo* sexual harassment, which occurs when an employer alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands. *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.1989). In a *quid pro quo* case, the corporate defendant is strictly liable for the supervisor's harassment. *Id.* at 1316.

We recently articulated the basic framework for analyzing a claim of hostile environment sexual harassment in *Faragher v. City of Boca Raton,* 111 F.3d 1530 (11th Cir.1997) (en banc). We delineated the agency principles that give rise to potential employer liability in the context of a hostile environment sexual harassment claim as follows: "An employer is directly liable for hostile environment sexual harassment if it knew, or upon reasonably diligent inquiry should have known, of the harassment and failed to take immediate and appropriate corrective action." *Id.* at 1535. In contrast, an employer is indirectly liable for hostile environment sexual harassment by a superior if (1) the harasser was acting within the scope of his employment in perpetrating the harassment or (2) the harasser was acting outside the scope of his employment but was aided in accomplishing the harassment by the existence of the agency relationship. *Id.* at 1536 (citing *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1558 (11th Cir.1987)). In the latter instance, "the employer is liable only if the harassment is accomplished by an instrumentality of the agency or through conduct associated with the agency status." *Id.* at 1538.

Farley contends that Gann's criticism of her job performance during his brief tenure as chief of dentistry was solely in retaliation for her refusal to submit to his advances and, therefore, served as a form of *quid pro quo* sexual harassment. Farley further urges that (1) Gann's harassment of Farley was so severe and pervasive that ACIPCO had constructive knowledge of the harassment

before Farley filed a formal complaint and (2) ACIPCO failed to take prompt and remedial action after Farley filed a grievance. We address *seriatim* each of these contentions.

A. *Quid Pro Quo* Sexual Harassment

Farley's assertion that Gann's conduct constituted *quid pro quo* sexual harassment is without merit. We previously have held that *quid pro quo* sexual harassment occurs when

> [t]he employee's reaction to harassment complained of affect[s] tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment by an employee must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment in order to create liability under this theory of sexual harassment.

*Henson v. City of Dundee,* 682 F.2d 897, 909 (11th Cir.1982) (italics omitted). Strict liability obtains in a *quid pro quo* context; "[w]hen a supervisor requires sexual favors as *quid pro quo* for job benefits, the supervisor, by definition, acts as the company." *Steele,* 867 F.2d at 1316.

Here, the record does not contain substantial evidence that Gann demanded Farley's acquiescence to his sexual overtures in exchange for a tangible job benefit. Indeed, the allegations that comprise the harassment claims refer to events that occurred prior to Gann's appointment to chief of dentistry. Moreover, it is undisputed that before Gann's promotion, Farley did not work under Gann's supervision as a dental assistant. In support of her *quid pro quo* claim, Farley notes that Gann—while acting in a supervisory capacity—criticized aspects of her job performance, particularly her attendance at the office. Dr. Faye Chambers, the dentist with whom Farley often worked, however, corroborated Gann's observation regarding Farley's absences. R2-58-26. More importantly, the type of behavior to which Farley points as indicating Gann's retaliatory conduct for her refusal to submit to his overtures does not constitute *quid pro quo* harassment under our circuit precedent. *See, e.g., Henson,* 682 F.2d at 900 (plaintiff established prima facie case of *quid pro quo* harassment where supervisor "made it clear to her that if she agreed to have a relationship with him, he would help her gain the approval of the city manager to attend the [police] academy"); *Sparks,* 830 F.2d at 1560-61 (plaintiff established genuine issue of fact as to both hostile environment and *quid pro quo* harassment where supervisor "repeatedly reminded [the plaintiff] that he could fire her should she fail to comply with his advances," "threatened her job," and "used the authority delegated

to him ... to assist in harassing [plaintiff]."). In this instance, the nature of the harassing conduct involved neither promises nor threats related to any aspects of Farley's job; indeed, there is no evidence that Gann possessed the authority or apparent authority during the period in which these events transpired to affect the terms of Farley's employment. In addition, there is neither evidence nor allegations that demonstrate that Gann—even after being promoted briefly to chief of dentistry—subjected Farley to adverse consequences or conditioned any job benefit or detriment on her acceptance of his sexual advances. We therefore conclude that Farley has failed to establish a genuine issue of fact with respect to her *quid pro quo* sexual harassment cause of action.

B. Hostile Environment Sexual Harassment

Farley avers that Gann's conduct was so severe and pervasive that ACIPCO knew or should have known that a hostile environment existed in the clinic with respect to Farley prior to the filing of a formal grievance. Farley further suggests that subsequent to her filing a complaint against Gann, ACIPCO not only failed to take prompt and remedial action, but took action that was retaliatory in nature.

The question of constructive knowledge is an issue of fact reviewed for clear error. *Reich v. Department of Conservation and Natural Resources,* 28 F.3d 1076, 1082 (11th Cir.1994). A plaintiff can prove an employer's knowledge of sexual harassment by showing that "the harassment was pervasive enough to charge the employer with constructive knowledge." *Faragher,* 111 F.3d at 1539 (citing *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988)). We note at the outset that the record in this case does not contain sufficient probative evidence to demonstrate that ACIPCO had *actual* knowledge that, during the relevant time period, Gann sexually harassed Farley; apart from Farley and Castro, no other dental assistant or dentist interviewed during the course of ACIPCO's internal investigation confirmed the assertion that knowledge of Gann's harassing conduct was commonplace, nor did other employees corroborate first-hand knowledge of events Farley contends that everyone witnessed.

More importantly, however, we are persuaded that ACIPCO had a valid, effective, and well-disseminated policy prohibiting sexual harassment within the company and that, given the

specific facts in this case, the existence of this policy precludes a finding of constructive knowledge regarding Gann's behavior. Farley does not challenge the efficacy or adequacy of ACIPCO's sexual harassment policy, nor does she dispute the fact that ACIPCO's policy was communicated to its staff and employees in training classes; in fact, it is undisputed that both Farley and Gann attended such a class in June, 1992, three years after the alleged harassment began but more than two years prior to the time Farley availed herself of ACIPCO's internal policy and filed a formal complaint. It is critical to note that ACIPCO's policy provided several alternate avenues by which a complainant could lodge a grievance. It is equally critical that ACIPCO's thorough investigation of this matter indicates that the company took complaints seriously and adhered to its own policy in practice. We determine that, because ACIPCO had an effective anti-sexual harassment policy that was unequivocally communicated to employees, ACIPCO was entitled to rely on the procedural framework provided in the policy to remain apprized of the conduct of its own staff.

Our holding is consistent with our view that direct liability exists when an employer knew[3] *or upon reasonably diligent inquiry* should have known of the harassment and failed to take action. *See Faragher,* 111 F.3d at 1535. Our circuit thus places upon the employer an obligation to make reasonable efforts to know "what is going on" with respect to its own employees. Where there is no policy, or where there is an ineffective or incomplete policy, the employer remains liable for conduct that is so severe and pervasive as to confer constructive knowledge. Where there exists an effective policy such as that present in the instant action, however, we conclude that the employer has made reasonably diligent efforts to learn and know of the conduct of its employees. Stated differently, we believe that once a company has developed and promulgated an effective and comprehensive anti-sexual harassment policy, aggressively and thoroughly disseminated the information and procedures contained in the policy to its staff, and demonstrated a commitment to adhering to this policy, it has fulfilled its obligation to make reasonably diligent efforts to "know what is going on" within the company; beyond this point, it is incumbent upon the employees to

---

[3]Again, we agree with the district court's determination that the record does not demonstrate actual knowledge by ACIPCO of the events alleged by Farley.

utilize the procedural mechanisms established by the company specifically to address problems and grievances.

In sum, we hold that an employer is insulated from liability under Title VII for a hostile environment sexual harassment claim premised on constructive knowledge of the harassment when the employer has adopted an anti-discrimination policy that is comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress.[4] In addition, it is important to restate that our conclusion in this regard applies only to a plaintiff's contention that the employer, with reasonably diligent efforts should have known that harassment was taking place. Where there is evidence from which a jury reasonably could infer that the employer *did* know of the harassment, of course, the existence of a policy—no matter how well-designed—will not absolve an employer of liability under Title VII.[5] This is not the case presented here, however. We conclude

---

[4]As stated by the Supreme Court in *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408,

> [W]e reject petitioner's view that the mere existence of a grievance procedure and a policy against discrimination, coupled with respondent's failure to invoke that procedure, must insulate petitioner from liability. While those facts are plainly relevant, the situation before us demonstrates why they are not necessarily dispositive. Petitioner's general nondiscrimination policy did not address sexual harassment in particular, and thus did not alert employees to their employer's interest in correcting that form of discrimination ... Moreover, the [employer's] grievance procedure apparently required an employee to complain first to her supervisor ... Petitioner's contention that respondent's failure [to complain] should insulate it from liability might be substantially stronger if its procedures were better calculated to encourage victims of harassment to come forward.

Unlike *Meritor,* however, the instant action involves a set of procedures explicitly designed to "encourage victims of harassment to come forward." *Id.* As noted by the Supreme Court, the existence of this policy is "plainly relevant" to the employer's potential liability; in this case, we believe that the policy is not only relevant but dispositive of the action.

[5]*Cf. Gary v. Long,* 59 F.3d 1391, 1398 (D.C.Cir.1995) ("[W]e conclude that an employer may not be held liable for a supervisor's hostile work environment harassment if the employer is able to establish that it had adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that she could report it to the employer without fear of adverse consequences.... [W]hen, as here, an employer has taken energetic measures to discourage sexual harassment in the workplace and has established, advertised, and enforced effective procedures to deal with it when it does occur, it must be absolved of Title VII liability under a hostile work environment theory of sexual harassment."). Although the court's analysis of employer liability in *Gary* is placed squarely within the context of a discussion of agency principles (akin to what we refer to as "indirect liability," *Faragher,* 111 F.3d at 1535)—that is, that a supervisor engaging in harassment does

that in light of the specific policy at issue in this action coupled with Farley's failure to avail herself of the grievance procedure established and implemented by ACIPCO, knowledge of Gann's conduct cannot be imputed to ACIPCO under a theory of constructive knowledge.

C. Retaliatory Discharge

Farley asserts that ACIPCO did not take prompt remedial action in response to her formal complaint. The record indicates, however, that ACIPCO immediately initiated an investigation of Farley's allegations; conducted extensive and thorough interviews with all members of the dental staff; prepared a report detailing the results of the investigation; sanctioned Gann for what ACIPCO found to be unprofessional conduct; and made strenuous efforts to relocate Farley to another position within ACIPCO. As previously mentioned, Farley remained employed by ACIPCO (on leave status) for several months after her complaint was filed and was terminated when it became clear that Farley would neither return to the dental clinic nor accept any other available position within ACIPCO. There is no evidence to support Farley's contention that her ultimate termination, six months after her grievance was initiated, was retaliatory or discriminatory in nature. Although Farley remains unsatisfied with ACIPCO's resolution of her complaint, we have never stated—nor does Farley propose that we have ever held—that a complainant in a discrimination action has a right to the remedy of her choice. We conclude that ACIPCO's response to Farley's formal grievance was both prompt and adequate and that her termination was neither retaliatory nor a pretext for discrimination on the basis of sex.

### III. CONCLUSION

In this appeal, Farley argues that ACIPCO must be held liable for the conduct of one of its employees, Gann, who allegedly subjected Farley to a pattern of sexual harassment at the workplace. Farley avers that Gann's unwelcome sexual advances constituted both *quid pro quo* sexual

---

not act with actual or apparent authority of the employer when the employer has implemented and enforced effective policies discouraging such conduct—we believe that the conclusion that an employer who has adopted effective anti-discrimination policies is shielded from Title VII liability under a hostile environment theory of sexual harassment obtains equally when the analytical approach rests on an inquiry into whether the employer made a diligent effort to learn of the alleged abusive conduct (i.e., "direct liability," *Faragher,* 111 F.3d at 1535).

harassment and hostile work environment sexual harassment; she further urges that ACIPCO's response to her formal complaint was neither prompt nor remedial and, ultimately, was retaliatory. We conclude that (1) the record does not contain sufficient evidence to establish either a *quid pro quo* claim for sexual harassment or a claim that ACIPCO in fact knew of the harassment but failed to take action; (2) under the facts of this case, ACIPCO's comprehensive, disseminated, and vigorously enforced anti-sexual harassment policy insulates the company from liability with respect to Farley's contention that it had constructive knowledge of the harassment; and (3) ACIPCO took immediate and effective corrective measures in response to Farley's grievance. We therefore AFFIRM the judgment of the district court.