EBEL, Circuit Judge,
dissenting.
I recognize that there has been a jury verdict for Ms. Wilson and, in considering TJC’s motion for judgment as a matter of law, we must interpret the evidence most favorably to Ms. Wilson. However, after careful consideration, I am convinced that this record is simply inadequate to support a jury verdict for Ms. Wilson. Accordingly, I would reverse and rule that the district court erred in failing to grant TJC’s motion for judgment as a matter of law on the hostile environment claim.
First, I believe as a matter of law that TJC’s anti-harassment policies and procedures were adequate. TJC had a strong anti-discrimination policy. It provided explicit directions on where complaints should be lodged, and those directions included a provision allowing the victim to bypass her supervisor if the harassment implicates the supervisor. Many courts have found policies with similar anti-discrimination and reporting provisions to be reasonable. See, e.g., Farley v. American Cast Iron Pipe Co., 115 F.3d 1548, 1553 (11th Cir.1997); Wathen v. General Elec. Co., 115 F.3d 400, 407 (6th Cir.1997); Bouton v. BMW of North America, Inc., 29 F.3d 103, 107 (3rd Cir.1994); Knabe v. Boury Corp., 114 F.3d 407, 413-14 (3rd Cir.1997). I do not believe that TJC’s policy can be faulted because the reporting must be made during regular working hours or because the Director of Personnel Services is located in a different building.
Second, as a matter of law, I do not believe that TJC received, or should have received, actual knowledge of this act of harassment at 7:00 a.m. on February 16 when the Broken Arrow Police Department reported it to Mr. Weber, the campus police supervisor for the southeast campus. This report did not disclose the identity of the victim. In any event, Mr. Weber was not management at TJC and his position was not at a sufficient level that knowledge possessed by him should be attributed to TJC. Although the campus police had responsibility to maintain physical security on the campus, the campus police had no general reporting responsibilities for sexual harassment claims under TJC’s anti-discrimination policy (other than harassment occurring within its own department). The reporting avenues for a formal discrimination claim were made quite clear in TJC’s policies, and Ms. Wilson was aware of them. As a matter of law, TJC cannot be held liable because other informal routes by which others might by happenstance have notified management or the Director of Personnel Services of this incident did not materialize in the 17 hours or so prior to the time Mr. Hall was arrested.
Third, as a matter of law, I believe that TJC’s response was timely and appropriate. As soon as management did learn of this incident, it immediately suspended Mr. Hall. When Mr. Hall was reinstated three weeks later, he was transferred to a different shift and a different location and Ms. Wilson was reassigned to a different building closer to the campus police office. No further incidents occurred between Ms. Wilson and Mr. Hall. Thus, TJC’s response was immediate and effective.
In summary, here TJC did everything that the law requires it to have done. It has a clear and forceful anti-discrimination policy. It enforced it vigorously and effectively as soon as it learned of the incident. To the extent that Ms. Wilson had minimal (and monitored) further contact with Mr. Hall the day after the initial incident, that was her informed choice. She was working in collaboration with the Tulsa Police Department to *545 perform an undercover sting operation to confirm Mr. Halts inappropriate conduct, and that operation was completely successful. I do not believe that she can hold TJC accountable for that brief second encounter when she elected to have it take place of her own volition and when it could have been avoided had she simply followed the clear reporting procedures made available to her by TJC.
Accordingly, I respectfully dissent.