Francine J. CLIMER, Plaintiff

v.

W.C. BRADLEY CO., Char–Broil, a Division of W.C. Bradley Co., and Integra Staffing, LLC, Defendants

No. 4:99–cv–87–3(CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

March 7, 2002.

Robert Thompson, Richard M. Escoffery, Elarbee, Thompson & Trapnell, LLP, Atlanta, GA, for Defendant Char–Broil.

John M. Capron, Kenneth J. Barr, Fisher & Phillips, LLP, Atlanta, GA, for Defendant

Maxine Hardy, Columbus, GA, for Plaintiff.

## ORDER

LAND, District Judge.

This case arises from Plaintiff's allegations that she was subjected to sexual harassment by an employee of Defendant W.C. Bradley Co. (hereinafter "W.C. Bradley")[1] while she was performing work for W.C. Bradley at its Char–Broil facility pursuant to an employment assignment by Defendant Integra Staffing, LLC (hereinafter "Integra"), a temporary employment assignment company. Plaintiff has filed suit against both W.C. Bradley and Integra, seeking monetary damages and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"). She also seeks damages for pendent state tort claims based upon the alleged negligent retention of a supervisor and the intentional infliction of emotional distress. For the reasons set forth below, the Court grants Defendants' motions for summary judgment.

## PROCEDURAL HISTORY

Within 90 days of filing its answer to Plaintiff's complaint, Defendant Integra filed its motion for summary judgment. On August 2, 2000, the Court entered an order granting Defendant Integra summary judgment on Plaintiff's pendent state tort claims but denying summary judgment on Plaintiff's Title VII claim. Regarding Plaintiff's Title VII claim, the Court specifically rejected Defendant Integra's argument that Plaintiff had failed to file her charge of discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") in a timely manner. The Court recognized, however, that the issue of whether Plaintiff filed a timely charge under the facts of this case presented an issue of first impression that had not been ruled upon by the Eleventh Circuit.

Defendant Integra subsequently filed another motion for summary judgment on December 27, 2000, on Plaintiff's Title VII

---

1. Plaintiff has sued W.C. Bradley Co. and Char–Broil, a division of W.C. Bradley Co. These two Defendants are referred to collectively in this order as W.C. Bradley.

claim, contending again, among other things, that Plaintiff's charge was not timely or adequate. In support of its motion for summary judgment, Defendant Integra submitted additional affidavits and discovery that had not been available when it filed its first motion for summary judgment.

On December 28, 2000, Defendant W.C. Bradley filed its motion for summary judgment. It seeks summary judgment on Plaintiff's Title VII claim, contending that it was not Plaintiff's "employer" for purposes of Title VII, that the alleged unlawful conduct complained of by Plaintiff does not constitute sexual harassment under Title VII, that insufficient evidence exists to support Plaintiff's retaliation claim, and that Plaintiff failed to file a timely charge of discrimination. Defendant W.C. Bradley also seeks summary judgment on Plaintiff's pendent state law claims.

The Court held a hearing on Defendants' motions for summary judgment on February 14, 2002. These motions are now ripe for determination.

## TIMELINESS OF PLAINTIFF'S CHARGE OF DISCRIMINATION

It is well settled that in order to obtain judicial consideration of a Title VII claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1). In this case, the last alleged unlawful employment practice occurred on March 11, 1998. Therefore, Plaintiff was required to file her charge of discrimination on or before September 7, 1998.

It is undisputed that Plaintiff's formal "Charge of Discrimination" on the form prescribed by the EEOC was first dated and signed on December 8, 1998, 92 days after the expiration of the 180 day filing period. Plaintiff contends, however, that the filing of the formal charge was simply an amendment to her previously filed charge which she contends was filed within the 180 day filing period. Specifically, Plaintiff claims that she mailed and faxed to the EEOC on April 10, 1998, the following: her unverified answers to "Interview Questions for Employment Discrimination;" a sworn "affidavit" executed by Plaintiff that included allegations of sexual harassment and described her employer as "Integra/Carbroil"; and a "Charge of Discrimination." In response to Defendants' motions for summary judgment, Plaintiff has produced a copy of the completed "Interview Questions for Employment Discrimination" form and her "affidavit" that she contends she submitted in a timely manner to the EEOC. The only verified formal "Charge of Discrimination" produced was signed and dated December 8, 1998, which is outside the 180 day statute of limitations period.

The EEOC acknowledges receiving in June 1998 via facsimile transmission Plaintiff's unverified responses to the "Interview Questions for Employment Discrimination" form and her "affidavit." The EEOC, however, has no record of receiving the *original* affidavit or *original* responses to the interview questions.

In a letter dated August 6, 1998, the EEOC sent Plaintiff a proposed formal charge of discrimination that it apparently had drafted based upon Plaintiff's responses to the interview questions and Plaintiff's previously submitted affidavit. The EEOC requested that Plaintiff sign the formal charge and return it to the EEOC. The letter further notified Plaintiff that charges of discrimination must be filed within 180 days of the date of the alleged discrimination. The Court notes that this letter, which Plaintiff acknowledges receiving, was received by Plaintiff prior to the expiration of the 180 day statute of limita-

tions. Plaintiff contends, however, that the charge prepared by the EEOC for her signature was inaccurate because it only listed W.C. Bradley as her employer and did not list Integra. Plaintiff therefore corrected the charge to include Integra as her employer, signed it on December 8, 1998, (92 days after the statute of limitations expired and 124 days after the date of the EEOC notification letter), and mailed it back to the EEOC. The EEOC records indicate they received the formal charge on December 14, 1998. Plaintiff contends that her unverified responses to "Interview Questions for Employment Discrimination" and her affidavit constitute a valid charge and that her subsequently filed formal charge was simply an amendment that related back to the date that those documents were submitted to the EEOC, which was within the 180 day statute of limitations.

Upon receiving the formal charge, the EEOC served a Notice of Charge of Discrimination on Defendant W.C. Bradley. The EEOC did not serve Defendant Integra with Notice of Charge of Discrimination, did not investigate Integra, or engage in any conciliation efforts with Integra. The EEOC took no action regarding Integra because it concluded that Plaintiff's allegations were addressed to W.C. Bradley and did not describe discriminatory conduct by Integra.

On the question of whether Plaintiff filed a timely charge of discrimination, the issue before the Court is whether an employee's written notification to the EEOC of alleged discrimination within 180 days of the alleged unlawful conduct in the form of responses to an intake questionnaire accompanied by a sworn affidavit describing the alleged unlawful conduct is sufficient to satisfy the charge filing requirement. This issue has been resolved differently by the various circuits. In a recent case of first impression, the Eleventh Circuit

adopted the position that "intake questionnaires" do not satisfy the statutory requirements of an administrative charge. *Pijnenburg v. West Georgia Health System, Inc.,* 255 F.3d 1304 (11th Cir.2001). The Court further concluded that since an "intake questionnaire" does not constitute a valid "charge," a subsequent formal charge filed with the EEOC beyond the 180 day limitation period does not relate back to the date that the "intake questionnaire" was filed with the EEOC.

The Eleventh Circuit in *Pijnenburg v. West Georgia Health System, Inc., supra,* did not rule that only formal charges of discrimination on forms prescribed by the EEOC should be considered valid charges for timeliness purposes, leaving the door open for consideration of filings that may satisfy the "charge" requirement yet not be in the form prescribed by the EEOC. *Id.* at 1307. In the case *sub judice,* Plaintiff's questionnaire was accompanied with a sworn affidavit, which distinguishes this case from the precise facts in *Pijnenburg v. West Georgia Health System, Inc.* (where the questionnaire was neither sworn nor accompanied by an affidavit). However, this Court also notes that in *Pijnenburg v. West Georgia Health System, Inc.,* the Eleventh Circuit did not rest its decision solely on the fact that the questionnaire was unsworn. The Eleventh Circuit's holding was broader:

> In our judgment, the sounder decision is that an intake questionnaire does not constitute a valid charge under Title VII for purposes of the statute of limitations. If it were to be so, the statute and regulations could so provide. Unlike the filing of answers to the interview questions in this case, a charge, in addition to triggering the running of the statute of limitations, serves two significant functions: (1) notification to the employer that a discrimination charge has been lodged with the EEOC; and (2) initi-

ation of the agency's investigation of the complaint. Neither of these two functions is satisfied by the filing of an Intake Questionnaire. To randomly treat this questionnaire as a charge would thwart these two objectives, and thereby render arbitrary what the agency has attempted to make uniform.

*Id.* at 1306–1307.

Therefore, even though Plaintiff's questionnaire in the case *sub judice* was accompanied by a sworn affidavit, it still did not satisfy two of the significant functions that a valid charge is to serve: (1) notification to the employer that a discrimination charge has been lodged with the EEOC; and (2) initiation of the agency's investigation of the complaint. These purposes are served by the filing of the formal sworn charge of discrimination, not by the faxed submission of a series of documents that are admittedly a work in progress, and in this case, according to the EEOC, did not even clearly identify the parties against whom the charges were being made. Consequently, a strong argument could be made pursuant to *Pijnenburg v. West Georgia Health System, Inc.* that Plaintiff in this case did not file a timely charge, and if a "fax intake questionnaire/sworn affidavit" exception to *Pijnenburg v. West Georgia Health System, Inc.* is to be carved out, it should be done by the Eleventh Circuit and not this Court.

 Remarkably, it did not take the Eleventh Circuit long to limit its holding in *Pijnenburg*. In *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314 (2001), the Court held that a sworn intake questionnaire, which included the basic information suggested by the applicable EEOC regulation, satis-fied the charge requirement of Title VII's statute of limitations. Therefore, under *Wilkerson v. Grinnell Corp.*, if the paperwork filed with the EEOC includes the basic information that should be included in a charge and it is sworn to by the employee, it does not matter what the paperwork is called. It is a valid charge for statute of limitations purposes.

The Court therefore finds that the intake questionnaire and accompanying affidavit submitted by Plaintiff to the EEOC in this case constituted a valid charge against W.C. Bradley.[2] The next question is whether it constitutes a valid charge against Integra. The only mention of Integra in the paperwork filed within the 180 days is that Integra is listed along with Char–Broil as employer in Plaintiff's affidavit. However, no allegations are made in that paperwork against Integra. Plaintiff's Title VII claim against Integra is for unlawful retaliation. Plaintiff claims that after she reported sexual harassment Integra participated in removing her from W.C. Bradley to a lower paying job.

 The question under *Wilkerson* is whether the circumstances of this case would "convince a reasonable person that [Plaintiff] manifested her intent to activate the machinery of Title VII" against Integra by the filing of her intake questionnaire and affidavit with the EEOC. Id. at 1320. The EEOC certainly did not understand this to be Plaintiff's intent, since the charge they prepared in response to the intake questionnaire and affidavit included only W.C. Bradley as the entity to whom the charge was directed. Moreover, the machinery of the EEOC was never activat-

---

**2.** It should be noted that the undisputed evidence discloses that the only paperwork received by the EEOC from Plaintiff within the 180 day statute of limitations was a facsimile copy of the intake questionnaire and accompanying affidavit. In light of the spirit of *Wilkerson*, this Court is reluctant to find that facsimile transmission is an inadequate mode of transmission. Therefore, the Court chooses not to disregard the charge because of its mode of transmission, although a strong argument could be made to the contrary.

ed against Integra because it did not believe Plaintiff's charge was directed against Integra. Therefore, Integra never had an opportunity until suit was filed to investigate the charges and attempt any reconciliation of the matter. The Court finds that under the circumstances of this case and based on a review of the paperwork filed by Plaintiff within the statute of limitations, no reasonable person could conclude that Plaintiff was asserting a retaliation claim against Integra. Consequently, since no valid charge was filed with the EEOC against Integra within 180 days, summary judgment is appropriate in favor of Integra.

### PLAINTIFF'S TITLE VII CLAIMS AGAINST W.C. BRADLEY[3]

#### A. Background

Plaintiff was hired by Integra on March 4, 1998. Her first assignment was a temporary, industrial position at W.C. Bradley/Char–Broil. When she went to work for Integra, Plaintiff understood that she was supposed to report any harassment or problems with her job assignment to Integra. All of the alleged sexual harassing conduct in this case occurred between March 6 and March 9, 1998. Plaintiff performed well on her job at W.C. Bradley/Char–Broil, enjoyed working there, and wanted to continue working there notwithstanding the alleged sexual harassment.

Plaintiff concedes that no "offensive touching" occurred while she was at W.C. Bradley/Char–Broil. Her sexual harassment allegations are based solely upon alleged inappropriate comments made to her by a co-worker, Lee Jacobs. Those inappropriate comments, according to Plaintiff, are as follows:

a) On her first day of work, March 6, 1998, Jacobs commented on the tunic Plaintiff was wearing and asked her why she was covering up such a nice "butt."

b) Later that same morning, Jacobs asked Plaintiff if she was married, and Plaintiff replied that she was.

c) The next day, March 7, 1998, Jacobs approached Plaintiff again and asked her if she was promiscuous, commenting that "with a body like that...what are you doing working here." Jacobs then asked Plaintiff if she wanted his pager number.

d) On that same day, Jacobs began talking to Plaintiff about "sex clubs" in Atlanta, describing the various sexual activities that supposedly took place in those clubs. Plaintiff told Jacobs she did not want to hear about it.

e) On March 8, 1998, another co-worker approached Plaintiff and gave her a folded scrap of paper with a number and the name "Lee" written on it, saying "Lee told me to give this to you." Later that day, Jacobs asked Plaintiff to go to Atlanta with him. Plaintiff replied, "Why would I go anywhere with you? I don't know you."

f) The following day, March 9, 1998, Jacobs said to Plaintiff, "You should have gone to Atlanta with me. I waited for you to page me."

On March 9, 1998, one of Plaintiff's co-workers informed lead man Dewey Watson that Jacobs was hanging around Plaintiff's work area and appeared to be making Plaintiff uncomfortable. Watson immediately informed his supervisor, Rocky Wood, who then instructed Watson to meet with Plaintiff and find out if there was a problem. Watson called Plaintiff into his office on March 9, 1998. Watson

---

**3.** For purposes of this Order, the Court assumes, but does not decide, that Plaintiff was an employee of W.C. Bradley for Title VII

purposes. *See Cobb v. Sun Papers, Inc.,* 673 F.2d 337 (11th Cir.1982).

informed Plaintiff that it had been brought to his attention that one of Plaintiff's co-workers might be making her uncomfortable, and he asked her if there was a problem. Plaintiff responded that Jacobs had made inappropriate comments to her.

After meeting with Plaintiff, Watson immediately informed Wood what he had learned from Plaintiff. Wood instructed Watson to bring Plaintiff to his office. Wood and Watson asked Plaintiff what she wanted, and she responded that she just wanted it to stop. Wood and Watson claim they told Plaintiff that they could talk to Jacobs, or that Plaintiff could talk to Jacobs herself and inform him that his comments were unwelcome. Plaintiff claims that Watson and Wood told Plaintiff that Jacobs was a "land shark" and that he had done this type thing before. She claims Watson and Wood laughed and made jokes about a Sharon Stone movie to which Jacobs had referred when talking to Plaintiff. Plaintiff claims that Wood and Watson encouraged her to talk to Jacobs herself because if they talked to him, Plaintiff might become "labeled." Plaintiff agreed to talk to Jacobs herself. Woods and Watson told Plaintiff to report back to Watson if she had any more problems.

After work on that same day, Plaintiff claims she called Integra to tell them what had happened at W.C. Bradley/Char–Broil and to find out to whom she should report the incidents.

Plaintiff spoke with Jacobs on March 10, 1998, asking him to stop making inappropriate comments. Jacobs did not engage in any sexual harassing conduct toward Plaintiff after she spoke with him on March 10, 1998. Jacobs apparently did become angry after Plaintiff spoke to him on March 10, 1998. Plaintiff claims that when she attempted to report back to Watson that Jacobs had become irate and hostile that Watson kept his back to her and moved away from her saying, "How would you feel if your name were being drug through the mud?" Plaintiff did not understand that she should report any further actions to Watson.

The next day, March 11, 1998, Plaintiff claims she informed Woods that she was "getting attitude" from some co-workers and being treated in an unfriendly manner. She claims she was told by Integra on the evening of March 11 that she was not to return to W.C. Bradley/Char–Broil. Plaintiff claims that she demanded to go back, but that Integra told her she was not allowed back on the W.C. Bradley/Char–Broil premises.

Plaintiff did not report to work at W.C. Bradley/Char–Broil on March 12, 1998, or at any time thereafter. Due to W.C. Bradley/Char–Broil's high absentee rate, no one at W.C. Bradley/Char–Broil thought anything was unusual when Plaintiff did not report to work. Between the time Plaintiff spoke to Watson and Wood about Jacobs's alleged conduct and the time Plaintiff's assignment at W.C. Bradley/Char–Broil ended, no one from W.C. Bradley/Char–Broil told anyone at Integra about Plaintiff's complaints. On March 16, 1998, Integra's Branch Manager called W.C. Bradley/Char–Broil's Human Resources Director and informed him that Plaintiff had voluntarily quit her assignment. There is some question as to whether Integra's branch manager informed W.C. Bradley/Char–Broil that the reason she quit was alleged sexual harassment. W.C. Bradley/Char–Broil contends that they were so informed. Integra initially indicated that they did not inform W.C. Bradley/Char–Broil of the reason, but apparently changed their testimony to concur with W.C. Bradley/Char–Broil's testimony that they were so informed.

When W.C. Bradley/Char–Broil learned that Plaintiff had quit because of alleged sexual harassment, it investigated Plain-

tiff's allegations. On March 16, 1998, W.C. Bradley/Char–Broil management met with Jacobs. They informed him of Plaintiff's allegations; reissued to him a copy of W.C. Bradley/Char–Broil's policy prohibiting sexual harassment, which he signed; and warned him that if their investigation substantiated Plaintiff's allegations, he would be disciplined up to and including termination.

W.C. Bradley/Char–Broil contends that it had never had a problem of this kind with Jacobs before this matter involving Plaintiff. Plaintiff contends that comments from Woods and Watson that Jacobs was a "land shark" is evidence that W.C. Bradley/Char–Broil knew of Jacobs's propensity to harass women.

During W.C. Bradley/Char–Broil's investigation of Plaintiff's complaints, it learned from another co-worker that Plaintiff had actively participated in the alleged conversations with Jacobs, including talking about sex clubs to which Plaintiff's brother allegedly was exposed in the Army. W.C. Bradley/Char–Broil also met with Plaintiff as part of its investigation. At the conclusion of its investigation, W.C. Bradley/Char–Broil concluded that Jacobs had acted inappropriately by leaving his forklift and holding non-work related conversations with other employees during work hours. W.C. Bradley/Char–Broil did not conclude that Jacobs had engaged in sexual harassment because it did not consider the alleged inappropriate comments to rise to the level of sexual harassment. Jacobs was issued a written disciplinary notice on March 25, 1998, stating that "any further incidents of this nature will result in a three day suspension or termination from employment. . . ."

In May 1998, another female worker complained that Jacobs was making inappropriate comments to her at work. W.C. Bradley/Char–Broil conducted an investigation and terminated Jacobs on May 19,

1998. A dispute exists as to whether Jacobs was terminated for sexual harassment or making inappropriate comments.

The EEOC investigated Plaintiff's complaints of sexual harassment and dismissed Plaintiff's claim, finding that W.C. Bradley/Char–Broil "took timely and appropriate action regarding the harassment allegations."

### B. *Summary Judgment Standard*

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Fed. R.Civ.P.* 56(c); *see Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen,* 121 F.3d at 646.

### C. *Hostile Work Environment Claim*

■ Plaintiff makes no contention that any supervisor engaged in any type of sexual harassment. The alleged inappropriate conduct was committed by a co-worker. To establish a *prima facie* case, Plaintiff must show (1) that she belonged to a protected group; (2) that she was

subject to unwelcome harassment; (3) that the harassment was based upon her sex; (4) that the harassment was sufficiently severe or pervasive as to alter the terms and conditions of her employment and create an abusive working environment; and (5) that her employer knew or should have known of the alleged harassment and failed to take prompt, remedial action. *Henson v. Dundee*, 682 F.2d 897, 903–905 (11th Cir.1982). The Court finds that Plaintiff has failed to produce sufficient evidence from which a reasonable jury could conclude that the alleged harassment was sufficiently severe or pervasive as to alter the terms and conditions of her employment. Therefore, Defendant W.C. Bradley is entitled to summary judgment on Plaintiff's sexual harassment claim. The Court further finds that Plaintiff has failed to produce sufficient evidence from which a reasonable jury could conclude that W.C. Bradley failed to take prompt, remedial action designed to end the harassment. Therefore, summary judgment is warranted in favor of Defendant W.C. Bradley for this reason also.

### 1. *Severity and Pervasiveness of the Alleged Harassment*

The Eleventh Circuit has raised the bar for plaintiffs asserting hostile environment, sexual harassment claims, making it clear that "motions for summary judgment...are appropriate to police the baseline for hostile environment claims." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir.1999) (*en banc*), *cert. denied* 529 U.S. 1068, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000). In *Mendoza, supra*, the Eleventh Circuit affirmed summary judgment in a Title VII sexual harassment case, finding that the complained-of acts were not sufficiently severe or pervasive. The alleged harassing conduct in that case was:

> (1) one instance in which [plaintiff's supervisor] said to [plaintiff] "I'm getting fired up"; (2) one occasion in which [plaintiff's supervisor] rubbed his hip against [plaintiff's] hip while touching her shoulder and smiling; (3) two instances in which [plaintiff's supervisor] made a sniffing sound while looking at [plaintiff's] groin area and one instance of sniffing without looking at her groin; and (4) [plaintiff's supervisor's] "constant" following and staring at [plaintiff] in a "very obvious fashion."

*Mendoza*, 195 F.3d at 1247. The Eleventh Circuit held that this conduct "falls *far short* of actionable hostile environment sexual harassment." *Id.* at 1249 [emphasis added]. As explained by the Eleventh Circuit in *Mendoza*, if it were to find that the conduct complained of "was sufficiently severe or pervasive to alter [plaintiff's] terms or conditions of employment, [the Court] would establish a baseline of actionable conduct that is far below that established by other circuits." *Mendoza*, 195 F.3d at 1251.

*Mendoza* is not an isolated or aberrant decision. Subsequent to its decision in *Mendoza*, the Eleventh Circuit confirmed in *Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir.2000) that uncivil, obnoxious behavior does not constitute actionable sexual harassment. In *Gupta*, the Eleventh Circuit held that judgment as a matter of law was appropriate even though plaintiff's supervisor allegedly: (1) "looked [her] up and down;" (2) suggested that they have lunch at a Hooter's restaurant; (3) called her at home frequently and often late at night and over weekends, asking her, "Where is your boyfriend?" and sometimes asking "if she was in bed;" (4) rolled his chair close to plaintiff and put his hand on her right thigh, "partly on the inside of her thigh;" (5) lifted the hem of [her] dress about four inches with his hand and asked, "What kind of material is this?;" (6) when she walked into his office and found him with his dress shirt off, "he unbuckled his belt and pulled down his zipper and started tucking his [dress] shirt in;" (7) told her

"You are looking very beautiful;" (8) stated to her, "Oh, you were all by yourself on a dark and stormy night? Why didn't you call me? I would have come and spend [sic] the night with you," which she understood to mean "that he wanted to [have a] sexual relationship with [her]". *Id.* at 578–79.

■ Although some of Jacobs's alleged comments in the case *sub judice* were inappropriate in the workplace, they were not sufficiently pervasive or severe to be actionable as sexual harassment. As described hereinabove, the Eleventh Circuit has refused to find far worse boorish behavior to constitute sexual harassment.[4] "Sexual harassment in the workplace is a serious matter. However, . . . [finding that the allegations in this case constitute] sexual harassment actionable under Title VII would trivialize true instances of sexual harassment." *Mendoza,* 195 F.3d at 1252, n. 10. Based on the foregoing, the Court finds that Defendant W.C. Bradley is entitled to summary judgment on Plaintiff's sexual harassment claim.

### 2. *Prompt Remedial Action*

■ The Court also finds that Defendant W.C. Bradley is entitled to summary judgment on Plaintiff's sexual harassment claim because Plaintiff has not produced sufficient evidence to establish that W.C. Bradley failed to take prompt, remedial action reasonably calculated to end the harassment. *See Steele v. Offshore Ship-*

*building, Inc.,* 867 F.2d 1311, 1316–17 (11th Cir.1989). It is undisputed that Defendants took action before Plaintiff even complained in this case, calling Plaintiff in and inquiring whether there was a problem, and then taking immediate steps to attempt to resolve the situation. W.C. Bradley's response was precisely what the law encourages. It was immediate, appropriate under the circumstances, and reasonably calculated to end the harassment. *See Farley v. American Cast Iron Pipe Co.,* 115 F.3d 1548, 1555 (11th Cir.1997). Moreover, Plaintiff even admits that after she complained, the alleged harassment ended, the exact result Plaintiff had requested. It is "of special importance" in determining whether the remedial action was adequate that the harassment stopped. *Steele,* 867 F.2d at 1316.

Furthermore, when Integra later informed W.C. Bradley of Plaintiff's allegations, W.C. Bradley immediately conducted a thorough investigation and disciplined Jacobs, the alleged harasser, warning him that any additional conduct of this kind would result in his termination. Two months later when another female employee complained about Jacobs, W.C. Bradley conducted another investigation and terminated Jacobs's employment.

Each action W.C. Bradley took in response to allegations of sexual harassment in its workplace was prompt, reasonable, and appropriate under the circumstances. Accordingly, Plaintiff has failed to estab-

---

4. The Eleventh Circuit in *Mendoza, supra,* cited with approval cases from other circuits involving similar or far worse conduct than that alleged in this case, and yet those circuits found the conduct not to be actionable harassment. *Mendoza,* 195 F.3d at 1246–47; *see e.g. Shepherd v. Comptroller of Public Accounts of Texas,* 168 F.3d 871, 872–75 (5th Cir.1999); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264–67 (5th Cir.1999); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998); *Adusumilli v. City of Chicago,* 164 F.3d 353, 357 (7th Cir.1998); *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1365–66 (10th Cir.1997); *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1167–68 (7th Cir.1996); *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 753–54 (4th Cir.1996); *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 823–24 (6th Cir.1997); *Baskerville v. Culligan Int'l. Co.,* 50 F.3d 428, 430 (7th Cir.1995); *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 337 (7th Cir.1993).

lish a second element of her *prima facie* case, and therefore, summary judgment is appropriate in W.C. Bradley's favor for this reason also.

### D. *Retaliation Claim*

█ Plaintiff claims that W.C. Bradley terminated her assignment to Char–Broil because she complained of sexual harassment. The Court finds that Plaintiff has failed to produce sufficient evidence to make out a *prima facie* retaliation claim. To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show: (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the two. *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1524 (11th Cir.1991).

█ It is undisputed that W.C. Bradley took no adverse employment action against Plaintiff. The evidence shows that the decision to end Plaintiff's assignment at Char–Broil was made solely by Integra. Plaintiff has been unable to produce any evidence to show that anyone associated with W.C. Bradley was involved in that decision in any way.[5] Moreover, since W.C. Bradley had nothing to do with the termination of Plaintiff's Char–Broil assignment, Plaintiff cannot establish a causal relationship between her complaints of harassment and the ending of her assignment. Therefore, Plaintiff is unable to make out two of the essential elements of a *prima facie* case for retaliation. Accordingly, summary judgment is required in favor of W.C. Bradley on Plaintiff's Title VII retaliation claim.

### STATE LAW CLAIMS

Having granted summary judgment to W.C. Bradley and Integra on all of Plain-

tiff's federal law claims, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claims. Accordingly, any state law claims that have not been previously disposed of by the Court are hereby dismissed without prejudice.

### CONCLUSION

Defendant Integra's motion for summary judgment is granted on Plaintiff's Title VII claim because Plaintiff failed to file a timely and adequate charge of discrimination against Integra with the EEOC. Defendant W.C. Bradley's (and Char–Broil's) motion for summary judgment is granted on Plaintiff's Title VII claim because the conduct complained of by Plaintiff does not constitute actionable sexual harassment, and W.C. Bradley took prompt, remedial action reasonably calculated to end the alleged harassment. W.C. Bradley (and Char–Broil) are also granted summary judgment on Plaintiff's Title VII retaliation claim because Plaintiff has failed to produce any evidence showing that W.C. Bradley took any adverse employment action against Plaintiff and because Plaintiff has been unable to establish any causal connection between her complaints of harassment and the ending of her employment assignment. Having granted summary judgment in favor of Defendants on all of Plaintiff's federal law claims, the Court declines to exercise pendent or supplemental jurisdiction over any of Plaintiff's remaining state law claims. Therefore, any of Plaintiff's state law claims against any of the Defendants that have not been previously dismissed are hereby dismissed without prejudice.

---

5. Plaintiff's counsel, at the hearing on Defendants' motion for summary judgment, essentially admitted that she had been unable to produce any evidence in support of her retaliation claim.