Marcus ASHMORE and Terrell
Lee Green Jr., Plaintiffs

v.

J.P. THAYER CO., INC., Defendant

No. 4:02–CV–78 (CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

Feb. 20, 2004.

---

**1364**

Maxine Hardy, Gwyn Newsom Bunn, Columbus, GA, for plaintiffs.

Deron Ray Hicks, George Golden Boyd, Jr., James A. Balli, Columbus, GA, for defendant.

### ORDER

LAND, District Judge.

The jury in the above captioned same-sex sexual harassment lawsuit returned a verdict awarding each Plaintiff $50,000. Defendant has renewed its motion for judgment as a matter of law, which it made during the trial and prior to the jury verdict.[1] In the alternative, Defendant has also filed a motion for new trial. For the following reasons, the Court grants Defendant's motion for judgment as a matter of law and conditionally grants Defendant's motion for a new trial pursuant to Federal Rules of Civil Procedure 50 and 59.

### BACKGROUND

The jury found in Plaintiffs' favor on all of Plaintiffs' claims. Those claims included federal law claims under Title VII for same-sex sexual harassment and retaliation, as well as state law claims under Georgia law for negligent retention. These claims arose from allegations that Gene Fye, a male employee of Defendant and Plaintiffs' supervisor, sexually harassed Plaintiffs and that Defendant subsequently took adverse employment actions against Plaintiffs when they complained about it.

*The Jury's Special Interrogatory Responses and Verdict*

The case was submitted to the jury with special interrogatories. In its responses to those interrogatories, the jury found that Plaintiffs were subjected to a hostile or abusive work environment because of their sex or gender and that this hostile or abusive work environment was created or permitted by a supervisor with immediate or successively higher authority over Plaintiffs. The jury also found that although Defendant exercised reasonable care to prevent any sexual harassment initially, Defendant failed to take reasonable and prompt corrective action to stop the harassment in this case after Plaintiffs complained about it. The jury further found that Plaintiffs reasonably availed

---

1. The Court reserved ruling on Defendant's motion at trial and submitted the case to the jury subject to a later ruling on the motion should it become necessary. *See* Fed.R.Civ.P. 50(b).

themselves of the preventive or corrective opportunities offered by Defendant as part of its sexual harassment policy.

The jury also found in favor of Plaintiffs on their retaliation claims, specifically finding that Plaintiffs engaged in protected activity, and then suffered damages as a proximate result of an adverse employment action taken against them that was causally related to the protected activities.

Finally, the jury found in Plaintiffs' favor on the state law negligent retention claim. In its responses to the special interrogatories, the jury found that Defendant failed to exercise ordinary care in retaining Fye and that Plaintiffs suffered damages as a proximate result of Defendant's retention of Fye.

The jury awarded Plaintiff Ashmore $15,000 for past net lost wages and benefits and $35,000 for emotional pain and mental anguish for a total award of $50,000. The jury also awarded Plaintiff Green $50,000, all of which represented damages for emotional pain and mental anguish. Green sought no recovery for lost wages or benefits.

Defendant contends that the evidence presented at trial does not support the jury verdict and that it is entitled to judgment as a matter of law. In the alternative, Defendant argues that the verdict is against the great weight of the evidence and that the court made certain errors during the trial, all of which require a new trial. To decide Defendant's motion, the Court must examine the relevant evidence presented at trial in a light most favorable to Plaintiffs. That evidence is as follows.

*The Evidence Presented at Trial*

Defendant hired Plaintiff Ashmore in July of 2000 as a maintenance worker.

Ashmore was assigned to work at Brittwood Apartments, a complex operated by Defendant. Plaintiff Green, who had originally been hired by Defendant in July of 2000 to work on some of its other rental properties, was transferred to Brittwood Apartments sometime that same summer. Both Plaintiffs were placed under the supervision of Defendant's employee, Gene Fye.

Both Plaintiffs testified that Fye began harassing them in November or December of 2000. Fye purportedly commenced the harassment by telling Plaintiffs about how he had slept on a park bench in Florida one summer and woke up with a man's hand down his pants. Fye also joked about homosexual behavior, blew kisses at both Plaintiffs, attempted to touch (and succeeded in touching) Plaintiffs' outer clothes in the area of the buttocks and penis, commented on Plaintiffs' buttocks and genitals, hugged Plaintiffs from behind, rubbed their backs with his front, and told Plaintiffs that he "loved" them. Fye would also "hunch" or "hump" on another male co-worker, who apparently did not mind, and attempted to "hunch" or "hump" on Plaintiffs.[2] Fye's conduct towards Plaintiffs culminated in Fye pinching and holding Plaintiff Ashmore's genitals with a device used to pick up trash.[3]

Fye, who was fired by Defendant, did not testify at trial. Other than the evidence described hereinabove, no evidence was presented that Fye was actually homosexual. In fact, Plaintiffs testified that Fye's obnoxious behavior included descriptions of his sexual relationship with his wife. However, the only evidence of alleged harassment committed at the work-

---

2. Plaintiffs testified that they thought Fye might have held the subjective belief that he was joking when he acted in the above described manner.

3. Both Plaintiffs testified that Fye had attempted unsuccessfully to grab both of them with this device on several other occasions.

place by Fye was restricted to harassment directed toward male employees.

Plaintiff Ashmore testified that after the incident involving the trash retriever, he asked to be transferred to a different property, but Mary Frances de Rivera, Brittwood Apartments Property Manager, refused. No evidence was presented that Ashmore informed de Rivera of Fye's inappropriate harassment at that time.

The evidence at trial established that Plaintiffs first complained about the harassment on January 16, 2001, to Tricia Johnson, the Assistant Property Manager at Brittwood Apartments. Construing the evidence favorably to Plaintiffs, the record establishes that Johnson took no action in response to Plaintiffs' initial complaints.

According to Plaintiffs' testimony, Fye's harassment continued after January 16. On January 23, Fye pinched Plaintiff Ashmore on the rear and told Green within earshot of Ashmore that if he did not move fast enough, Ashmore would "stick him in the ass." On January 26, 2001, Plaintiffs complained to de Rivera about Fye's conduct. Plaintiff Green testified that de Rivera responded to him that Ashmore was "trouble" and just looking to take over Fye's job. Notwithstanding Green's suggestion that de Rivera was skeptical about the harassment allegations, the record establishes that de Rivera verbally reprimanded Fye and admonished him to refrain from harassing conduct even if it was done in a joking manner. She also reminded Fye of the company's sexual harassment policy and placed a note in his personnel file.

Fye's conduct continued even after the January 26 action taken by de Rivera. Plaintiffs testified that Fye continued to harass them, grabbing his own genitalia and taunting Ashmore to "check this out"

and exclaiming about the size of another male worker's genitalia. Additionally, Fye commented on the size of Ashmore's genitalia and repeatedly hugged Green from behind while Green was working on his hands and knees. Plaintiffs' testimony is vague as to when this conduct occurred except that it was between January 26 and the date that they hired an attorney on February 14. There is no evidence that Plaintiffs reported this continued harassment to Defendant, until their attorney sent Defendant a letter dated February 19, informing Defendant that Plaintiffs intended to file notice with the Equal Employment Opportunity Commission. Defendant fired Fye on February 22, three days after the date of the letter and approximately one month after the first specific complaint of January 16.

Following Fye's termination, Plaintiff Ashmore maintains that de Rivera subjected him to unprecedented scrutiny and discipline in retaliation for his complaints. In support of these vague allegations, Ashmore provided the following specific testimony. He testified that he had applied for Fye's vacant position and that he saw his "shredded" application laying next to where he clocked in every morning, that de Rivera would not allow Ashmore or Green to work with others in performing heavy manual tasks around Brittwood, that de Rivera accused Ashmore of stealing, and that she filled Plaintiffs' personnel records with discipline actions of which they were not made aware. Plaintiffs also presented testimony from a former employee of Defendant, Angela Watson, who testified that de Rivera said that she wanted Plaintiffs gone because they were "trouble." Watson further testified that de Rivera gave her a notepad and told her and another employee to watch Plaintiffs and to report back anything that they did.[4]

---

4. Mary de Rivera testified that her instruction to report back Plaintiffs' activities was actual-

ly in reference to Watson's own complaints about Plaintiffs.

Ashmore ultimately quit his job on March 26, 2001. Green remained an employee of Defendant until February of 2003, almost two years after Fye was fired by Defendant.

Defendant maintains that at the time of the alleged harassment it had in place a sexual harassment policy reasonably designed to prevent unlawful harassment and that it responded appropriately to Plaintiffs' complaints about Fye's conduct. Defendant's sexual harassment policy, which was admitted into evidence, provides:

> Sexual harassment is a violation of the law and J.P. Thayer/J. P. Thayer Company will not tolerate sexual harassment at any level by management or non-management employees. Therefore, any and all conduct of a sexual nature, including words as well as physical actions which have the purpose or effect of unreasonably interfering with an employee's work performance, or creates an intimidating, hostile, or offensive working environment is strictly prohibited. Requiring an employee to submit to sexually harassing conduct as a term or condition of employment is strictly prohibited.
>
> Any employee confronted with a decision or behavior which he/she believes is contrary to the above policy should notify J.P. Thayer Company/J. P. Thayer Company' [sic] president within forty-eight (48) hours of the act. The company will investigate the matter on a confidential basis and take appropriate action. Any employee who violates the above policy will be subject to appropriate disciplinary action, up to and including termination.

De Rivera testified that she was first notified of problems with Fye on January 26. She also testified that Plaintiffs did not mention any problems with Fye as part of their written job evaluations in January or at any prior time. De Rivera testified that when she was notified of Fye's conduct on January 26, she told Plaintiffs to contact her either personally or via the company's hand-held radios if Fye acted inappropriately toward them again. De Rivera also testified that she "wrote up" Fye shortly after receiving Plaintiffs' January 26 complaint. De Rivera maintained that she never received another complaint from Plaintiffs until the letter of February 19 from Plaintiffs' attorney. After receiving the subsequent complaints through Plaintiffs' attorney, Defendant fired Fye.

Regarding Plaintiff Ashmore's claim that he was overlooked when Defendant sought a replacement for Fye, de Rivera testified that she asked Ashmore if he was interested in taking Fye's position before Fye had been fired, and Ashmore responded that he was not interested because the job would be too stressful for him.[5] In response to Plaintiffs' complaints that they were written up inappropriately after they complained about the harassment, Defendant presented the testimony of A.V. Warren, who was hired to replace Fye. He testified that he had experienced problems with Plaintiffs' job performance and that he documented the problems in Plaintiffs' personnel files because he was accustomed to doing so in his prior jobs.

Based upon this evidence, the jury returned a verdict in favor of both Plaintiffs on their Title VII sexual harassment claims, their Title VII retaliation claims, and their state law negligent retention claims.

## DISCUSSION

■ In deciding a motion for judgment as a matter of law:

---

**5.** Fye was apparently experiencing some health problems, as he was fifty-seven years old, overweight, and had recurring back problems.

[the] court must view all the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party .... The court should grant the motion only if it finds that reasonable people exercising impartial judgment could not arrive at a contrary verdict, and may not weigh the evidence or decide the credibility of witnesses.

*Berman v. Orkin Exterminating Co., Inc.,* 160 F.3d 697, 701 (11th Cir.1998) (internal citations and quotations omitted). The court "will not second-guess the jury or substitute [the court's] judgment if [the jury's] verdict is supported by sufficient evidence." *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 582 (11th Cir.2000).

■ The standard for granting a motion for new trial is less rigorous for the moving party than the standard for judgment as a matter of law. When considering whether to grant a new trial, the Court must determine whether "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of the verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1186 (11th Cir.2001) (citations omitted).

### Defendant's Motion for Judgment as a Matter of Law

Defendant contends that the evidence presented at trial does not support the jury verdict in favor of Plaintiffs. It argues that no reasonable jury could have reached the conclusions that were reached by the jury in this case, and that it is entitled to judgment as a matter of law as to each of Plaintiffs' claims. The Court therefore must evaluate each claim separately to determine whether Defendant is entitled to judgment as a matter of law.

### Plaintiffs' Claims for Sexual Harassment

■ In *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), the Supreme Court held that same-sex sexual harassment is actionable under Title VII. *Oncale* makes it clear that a victim of same-sex sexual harassment must prove the same elements as a victim in an opposite-sex harassment case. Victims of on the job sexual harassment, whether their harasser is of the same or opposite sex, "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination *because of sex.*[6]" *Id.* at 81, 118 S.Ct. 998 (internal quotations and original alterations omitted) (emphasis added). Additionally, victims must show that the complained of conduct was "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Id.* Although the legal standards for evaluating same-sex and opposite-sex harassment cases are the same, the Supreme Court recognized in *Oncale* that courts may consider the "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex" when determining whether a working environment was objectively harassing or whether the harassment was based on sex. *Id.*

■ The jury's responses to special interrogatories in the case at bar indicate that the jury found that Plaintiffs were subjected to a "hostile or abusive work environment" based upon their gender. The Court must examine whether the evidence at trial supports this finding. "[W]hen analyzing whether an employer should be held liable for a supervisor's

6. In the Title VII context, "sex" is synony-
mous with "gender."

harassment, courts should separate these cases into two groups: (1) harassment which culminates in a 'tangible employment action,' such as discharge, demotion or undesirable reassignment, and (2) harassment in which no adverse 'tangible employment action' is taken but which is sufficient to constructively alter an employee's working conditions." [7] *Frederick v. Sprint United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir.2001) (internal citations omitted). In the case *sub judice*, it is undisputed that Fye took no "tangible employment action" against Plaintiffs. Instead, Plaintiffs contend that his harassment constructively altered their working conditions.

■ To prevail on such a claim under Title VII, the evidence must be sufficient to establish:

"(1) that [the plaintiff] belongs to a protected group; (2) that [the plaintiff] has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee, such as [the employee's sex]; (4) that the harassment was [objectively and subjectively] sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious liability or of direct liability."

*Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1279–80 (11th Cir.2003) (fourth alteration in original) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir.2002)). Defendant argues that it is entitled to judgment as a matter of law on Plaintiffs' sexual harassment claims because (1) Fye's harassment was not based upon Plaintiffs' gender; (2) Fye's harassment was not sufficiently severe or pervasive to alter the terms and conditions of Plaintiffs' employment; or (3) even if Fye's harassment was gender based and sufficiently pervasive and severe, Defendant cannot be vicariously liable for Fye's harassment because it had a policy in place to prevent sexual harassment, it acted reasonably to stop the harassment upon being notified of it, and Plaintiffs failed to follow Defendant's sexual harassment policy by not reporting the harassment sooner.

*a) Was the harassment gender based?*

■ The Court finds that sufficient evidence was presented from which a reasonable jury could have concluded that Fye's harassment of Plaintiffs was based upon their male gender. Although the evidence is disputed as to whether Fye was homosexual, this does not answer the question. The issue is whether his conduct was directed at Plaintiffs because *they* were male. Fye's conduct, which was reserved only for male employees and included the simulation and discussion of sexual acts between males, supports the jury's conclusion that the harassment was gender based.

*b) Was the harassment sufficiently severe and pervasive?*

■ In determining whether gender or sexually related comments and actions "are sufficiently severe and pervasive from an objective standpoint to alter an employee's terms or conditions of employment," the Court considers the following: " '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humil-

7. Many courts have traditionally divided sexual harassment cases into *"quid pro quo"* cases and "hostile environment" cases. In fact, the Eleventh Circuit Pattern Jury Instructions used in the case *sub judice* use this terminology. As noted in *Frederick,* the time has come to move away from this terminology. *See* 246 F.3d at 1311.

iating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Gupta*, 212 F.3d at 584 (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir.1999) (*en banc*), *cert. denied* 529 U.S. 1068, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000)); *see also Walton*, 347 F.3d at 1285 n. 12.

The Court has located no Eleventh Circuit case analyzing what constitutes severe and pervasive harassment in the same-sex harassment context. Therefore, the Court must rely upon analogous opposite-sex harassment precedent. This Court has previously observed that the Eleventh Circuit has set a high bar for employees to overcome in establishing that opposite-sex harassment is sufficiently severe and pervasive to be actionable under Title VII. *See Climer v. W.C. Bradley Co.*, 198 F.Supp.2d 1370, 1378–79 (M.D.Ga.2002). For example, in *Mendoza v. Borden, Inc.*, the Eleventh Circuit found no actionable sexual harassment even though the male supervisor engaged in such inexcusable behavior as commenting that he was "getting fired up," rubbing his hip against the female employee's hip while touching her shoulder, making sniffing sounds while looking at the female employee's groin, and constantly watching the employee. 195 F.3d at 1244. Similarly, in *Gupta v. Fla. Bd. of Regents*, the Eleventh Circuit found no actionable sexual harassment when the male supervisor looked the female employee "up and down," suggested that they have lunch at Hooters, called her house and asked about her boyfriend and whether she was in bed, sat close to the employee and put his hand on her inside thigh, made suggestive comments to the employee, partially undressed in front of the employee and lifted up the employee's dress hem four inches. 212 F.3d at 571. Therefore, one could argue that the conduct in the present case, although inappropriate

and disgusting, is no more boorish than that in *Gupta* and *Mendoza*.

On the other hand, binding precedent also exists supporting a finding that behavior arguably analogous to that in the case at bar is actionable. In *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501 (11th Cir.2000), the Court found actionable sexual harassment when a male supervisor repeatedly made sexually suggestive comments about a female employee's body and voice, pulled his pants up to reveal the imprint of his genitalia, looked at the employee suggestively, stuck his tongue out at the female employee in an obscene manner, inappropriately rubbed his body parts against the employee, and asked her sexual questions. One could argue that the conduct in the case at bar is at least as severe and pervasive as that found actionable in *Johnson*.

Whether the present case is more closely analogous to *Mendoza* and *Gupta* than it is to *Johnson* is a close call. The Court finds it unnecessary to resolve that issue today. As explained hereinbelow, Defendant is not vicariously liable for Fye's conduct under the circumstances of this case, even if Fye's conduct is deemed sufficiently severe and pervasive to alter the terms and conditions of Plaintiffs' employment.

### c) Is Defendant Vicariously Liable for Fye's harassment?

 Even if its supervisor's gender based harassment is so severe and pervasive that it alters the terms and conditions of its employees' employment, the employer can only be liable for the harassment of its supervisor if a basis for imposing vicarious liability exists. In a case such as the one *sub judice*, in which the supervisor took no tangible employment action, the Defendant can escape liability through an affirmative defense if it proves by a preponderance of the evidence that it "exercised reasonable care to prevent and

correct promptly any sexually harassing behavior, and [that the victim] employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." [8] *Walton,* 347 F.3d at 1286 (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761–63, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

The jury found that Defendant exercised reasonable care to *prevent* sexually harassing behavior. However, the jury also found that Defendant did not exercise reasonable care to *correct promptly* Fye's harassing behavior. Defendant contends that the evidence presented at trial simply does not support this conclusion. Defendant also contends that the evidence does not support the jury's conclusion that Plaintiffs acted reasonably to take advantage of any preventive or corrective opportunities that Defendant offered through its written sexual harassment policy.

■■■■ It is tempting to dismiss flippantly Defendant's argument with a string citation of cases standing for the proposition that issues of "reasonableness" are uniquely questions of fact for the jury to resolve. However, as recognized by the Eleventh Circuit, notwithstanding that "claims of employment discrimination, including sexual harassment claims, present fact-intensive issues, motions for ...judgment as a matter of law are appropriate to 'police the baseline for hostile environment claims.' " *Mendoza,* 195 F.3d at 1244. In

the case at bar, the Court finds that the evidence presented at trial conclusively establishes as a matter of law that Defendant took reasonable corrective action in response to Plaintiffs' complaints.

Plaintiffs first made specific complaints about Fye's conduct to Tricia Johnson on January 16, 2001.[9] Although Johnson failed to follow up on Plaintiffs' complaints, de Rivera acted promptly when she was notified on January 26, 2001, just ten days later. She admonished Fye that he should refrain from such conduct, reminded him of Defendant's sexual harassment policy, and placed a notation in his personnel file. Defendant received no further specific complaints from Plaintiffs until February 19, 2001, when it received a letter from Plaintiffs' attorney. Defendant terminated Fye three days after receiving that letter. Construing the evidence in the light most favorable to Plaintiffs, which the Court is required to do, Defendant waited thirty-seven days from Plaintiffs' first complaint until it fired Fye. During that short period of time, it admonished Fye, disciplined him, and was unaware for the last twenty-four days of his employment that the problem continued. The Court finds as a matter of law that, notwithstanding the jury's finding to the contrary, Defendant acted reasonably in promptly correcting Fye's sexually harassing behavior.

■■■ To prevail on its affirmative defense, Defendant must also establish that Plaintiffs failed to take reasonable advantage of opportunities provided by Defendant to prevent and correct the sexual harassment.[10] *See Frederick,* 246 F.3d

---

8. This legal principle is commonly referred to as the "Ellerth/Faragher Affirmative Defense" based upon the names of the Supreme Court decisions establishing the principle.

9. For purposes of this motion, the Court assumes that Johnson was an appropriate person to notify pursuant to Defendant's sexual harassment policy.

10. Although the Eleventh Circuit has made it clear that the *Faragher/Ellerth* affirmative defense requires that an employer prove that it acted reasonably *and* that the employee acted unreasonably, not all circuits agree in the "sudden sexual harassment context":

At least three other circuits have addressed, in some form, the practical difficulties of applying *Faragher* in cases involving claims

1305; *see also Madray v. Publix,* 208 F.3d 1290 (11th Cir.2000). Plaintiffs' own testimony establishes that Fye first began harassing them in November or early December of 2000, but that neither Plaintiff notified Defendant of Fye's improper conduct until January 16, 2001, when both Plaintiffs complained to Tricia Johnson.[11] Therefore, Plaintiffs waited over one month to report the alleged harassment initially. When the harassment continued after Plaintiffs notified Johnson, Plaintiffs waited an additional ten days to report the conduct to de Rivera, who was the supervisor in charge at the apartment complex where Plaintiffs were employed. De Rivera admonished Fye and included a notice of Defendant's anti-harassment policy in Fye's personnel file. Plaintiffs admit that they never again lodged a complaint about Fye's behavior until February 19, 2001, when their attorney wrote a letter to Defendant.

Defendant's written sexual harassment policy, which the jury found reasonably prevents sexual harassment, provides that employees shall notify Defendant of any claims of sexual harassment within forty-eight hours of their occurrence. It is undisputed that Plaintiffs failed to notify anyone in a position to stop the harassment within forty-eight hours of the initial harassment. Moreover, when the harass-

ment continued after they first notified Johnson, they waited an additional ten days to report the continuing harassment to the person in charge, de Rivera. Importantly, after de Rivera attempted to stop the harassment but it nevertheless continued, Plaintiffs waited another 24 days to notify de Rivera that the harassment was continuing. When de Rivera discovered that the harassment continued despite her attempt to stop it, she had Fye's employment terminated. The Court finds that Plaintiffs' failure to follow Defendant's policy, including their inexcusable failure to notify Defendant of continued alleged harassment after January 26, demands a finding that Plaintiffs failed as a matter of law to take reasonable advantage of opportunities provided by Defendant to prevent and/or correct the sexual harassment.

The undisputed evidence establishes that Defendant acted reasonably to prevent sexual harassment in its workplace and that it acted promptly and reasonably to correct the harassment in this case upon being notified of it. The evidence also establishes that Plaintiffs failed to follow Defendant's sexual harassment policy and otherwise acted unreasonably by failing to report the harassment when it continued. Therefore, Defendant must prevail as a matter of law on its affirmative defense.

---

of "sudden sexual harassment." The question faced in those cases is whether an employer is liable for the harassment committed by its supervisors where neither party is at fault—i.e., where the employer acts reasonably to prevent and correct any sexually harassing behavior, and where the employee avails herself, to the extent that she can do so, of any protections afforded by her employer. One circuit has held that an employer is liable for any harassment that occurred prior to the corrective action .... Two other circuits have addressed the issue but have not rendered a definitive holding .... The EEOC takes the position that an employer is liable where both parties act

reasonably to prevent and correct any sexually harassing behavior .... We need not weigh in on this debate because Walton failed to raise this theory below.
*Walton,* 347 F.3d at 1291–92.

11. At trial, Plaintiffs argued that their complaints to Fye himself constitute appropriate notice under Defendant's sexual harassment policy. The Court rejects this argument and finds that Plaintiffs did not exercise reasonable care to avoid harm simply by complaining to Fye, especially given that Fye gave no indication that he would discontinue his conduct in response to Plaintiffs' complaints. *See Walton,* 347 F.3d at 1290.

Accordingly, Defendant is not liable to Plaintiffs for its employee's sexual harassment of Plaintiffs.

### Plaintiffs' Claims for Retaliation

■ The jury also found that Defendant retaliated against Plaintiffs because of their complaints about Fye's harassment. The Court's conclusion that Defendant is entitled to judgment as a matter of law on Plaintiffs' underlying sexual harassment claims is not dispositive of Plaintiffs' retaliation claims. *See Gupta,* 212 F.3d at 586 (A plaintiff seeking to recover for retaliation need not prove the underlying unlawful conduct of which he or she complained so long as there was a reasonable good faith belief that the complained of conduct violated Title VII). The Court must evaluate the evidence presented at trial to determine whether it was sufficient to support the jury verdict regarding retaliation.

■ To establish a prima facie case of retaliation through circumstantial evidence, a "plaintiff ... must ... show[ ] that (1) the plaintiff engaged in a statutorily protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action." *Berman,* 160 F.3d at 701. Defendants argue that the evidence does not support the jury's finding that Plaintiffs suffered an adverse employment action that was causally related to their complaints about Fye's conduct.

■ It is clear that neither Plaintiff was fired or demoted because of complaining about Fye's harassment. However, Plaintiffs can still prevail on their retaliation claims even if they were not fired or demoted. "Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions." *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998). "[N]ot all conduct by an employer negatively affecting an employee [however] constitutes [an] adverse employment action." *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1238 (11th Cir.2001). An action must "show a serious and material change in the terms, conditions, or privileges of employment" for it to constitute an adverse employment action. *Id.* at 1239. "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

■ "To establish [a] causal connection, a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.' " *Clover v. Total System Services, Inc.,* 176 F.3d 1346, 1354 (11th Cir.1999) (quoting *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985)). Temporal proximity between the protected activity and the adverse employment action may suffice to show a causal connection if there is any other evidence suggesting that the employer-defendant was aware of the protected expression. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993).

■ Since Green and Ashmore allege different adverse employment actions in support of their respective retaliation claims, the Court must examine each claim separately. No evidence was presented at trial to establish that Plaintiff Green suffered any adverse employment action. Green continued to be employed by Defendant for almost two years after he complained of Fye's harassment. He voluntarily left for a job with another employer. During that two year period that he continued to work for Defendant, he received timely bonuses and pay raises. The only conceivable "adverse" employment action relates to Defendant's refusal to transfer

**1374**

Green after someone scratched his car with a key and he found his tire flattened. No evidence was presented to connect the flat tire and scratched car to the Defendant. Moreover, the Court finds that the refusal to transfer him was not a serious and material change in the terms, conditions, or privileges of his employment. Therefore, it is not an adverse employment action for Title VII purposes. Defendant is entitled to judgment as a matter of law on Green's retaliation claim.

The Court also finds Plaintiff Ashmore's retaliation claim lacking. Ashmore points to two separate actions by Defendant in support of his retaliation claim. First, Ashmore testified that after Fye was fired, Ashmore applied for his job. A.V. Warren was hired for the position. Ashmore presented no evidence, and does not contend, that Warren was unqualified for the job. Instead, Fye testified that he found his application for Fye's position shredded next to the time clock that he used every morning. He apparently maintains that this is evidence that he was not considered for the job. The Court finds that his shredded application does not constitute an adverse employment action. Moreover, insofar as he suggests that he was passed over for the promotion due to his complaints about Fye, the Court finds that the evidence at trial does not support this conclusion. Plaintiffs presented no evidence that Defendant's reasons for hiring A.V. Warren for the position instead of Ashmore were pretextual. *See Brochu v. City of Riviera Beach,* 304 F.3d 1144, 1155 (11th Cir.2002).

Ashmore also testified that he quit his job only because Defendant had started a campaign against him by filling his personnel file with reprimands and by refusing to let Ashmore work with Green on projects

typically requiring two people. Ashmore's new supervisor, A.V. Warren, who replaced Fye and was not even employed with Defendant at the time Fye engaged in the harassment, testified that as Ashmore's supervisor, he had problems with Ashmore's work and that he placed the notations in Ashmore's file because this is the way he operated on other jobs prior to being employed by Defendant. Insufficient evidence was presented to impeach Warren's testimony or to establish that the reason given for the "write-ups" was pretextual. *See id.*

The Court finds that the evidence in this case does not support a finding that Defendant's actions constituted adverse employment actions or were causally connected to Ashmore's complaints about Fye. Moreover, the Court finds that no evidence was presented by Ashmore to establish that the reasons given by Defendant for the actions were false or pretextual. Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law on Ashmore's retaliation claim.[12]

*Plaintiffs' Claims for Negligent Retention*

Having determined that Defendant is entitled to judgment as a matter of law on Plaintiffs' Title VII claims, the Court must next address the jury verdict in favor of Plaintiffs on their state law negligent retention claim.

A cause of action for negligence against an employer may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment.

---

**12.** Ashmore also alleged that de Rivera refused to allow him to work with others on heavy manual tasks and accused him of steal-

ing. The Court rejects any contention that these actions constitute adverse employment actions.

*Cox v. Brazo,* 165 Ga.App. 888, 889, 303 S.E.2d 71, 73 (1983). In evaluating negligent retention claims based upon sexual harassment, Georgia courts have focused upon the same factors relied upon by federal courts in resolving Title VII sexual harassment claims. Those factors include " 'whether the employer had an express policy discouraging unlawful discrimination, provided a mechanism by which employees could complain, and promptly responded to the complaints ....' " *Harvey v. McLaughlin,* 198 Ga.App. 105, 108, 400 S.E.2d 635, 637 (1990) (quoting *Coleman v. Housing Auth. of Americus,* 191 Ga.App. 166, 170–71(2), 381 S.E.2d 303, 307 (1989)).

[redacted] The jury found that Defendant had a reasonable sexual harassment policy designed to prevent sexual harassment. Defendant was put on notice of Fye's conduct as of January 16, 2001. Plaintiffs failed to produce evidence that Defendant should have reasonably been aware of Fye's propensity to harass his male employees before January 16, 2001. Although Defendant did not act immediately to address the harassment, it acted promptly on January 26, when de Rivera reprimanded Fye, admonished him to cease the harassment, reminded him of the sexual harassment policy, and placed a notation in his personnel file. Then, after receiving no further complaints after January 26 until it received a letter from Plaintiffs' attorney on February 19, Defendant fired Fye on February 22, three days after receiving notice of the continued complaints via the letter from Plaintiffs' attorney. Based on the foregoing, the Court finds that Defendant acted as a reasonably prudent employer would act under similar circumstances and that Defendant is entitled to judgment as a matter of law on Plaintiff's negligent retention claim.

**Defendant's Motion for New Trial**

Defendant alternatively moves for a new trial based upon the following: (1) the verdict and/or the amount of the verdict was against the great weight and preponderance of the evidence, (2) manifest injustice was rendered by the exclusion of evidence acquired by Defendant shortly before trial, (3) the jury instructions constituted prejudicial error because they did not specifically charge on Defendant's interpretation of same-sex sexual harassment, and (3) inconsistency of the jury's verdict concerning Defendant's affirmative defense.

Having reviewed the evidence, the Court conditionally grants Defendant's motion for new trial pursuant to Federal Rule of Civil Procedure 50(c)(1). The Court grants the motion on the ground that the jury's verdict was against the great weight of the evidence presented at trial. This conclusion is based upon the same rationale expressed in support of the Court's conclusion that Defendant is entitled to judgment as a matter of law.

CONCLUSION

Based on the foregoing, the Court directs the entry of judgment as a matter of law in favor of Defendant. Should the Court of Appeals find the Court's ruling erroneous, the Court conditionally grants Defendant's motion for new trial.

The Court does not reach this result hastily. It is reluctant to overturn a jury verdict. This Court also appreciates the serious nature of sexual harassment whether it be same-sex or opposite-sex harassment, and the Court certainly does not condone the behavior engaged in by Defendant's employee in this case. However, the jury in this case, perhaps because of the persuasiveness of Plaintiffs' talented counsel or the Court's failure to adequately communicate the law, returned a verdict

that is contrary to the law of this Circuit. Accordingly, it cannot stand.