[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11454

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 15, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-03703-CV-HTW-1

JOHNNY L. MATHIS,

Plaintiff-Appellant,

versus

LEGGETT & PLATT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 15, 2008)**

Before TJOFLAT, ANDERSON and COX, Circuit Judges.

PER CURIAM:

Johnny Mathis appeals his former employer's successful motion for

summary judgment on Mathis's various employment discrimination claims brought

after his termination. Mathis was an eight-year veteran of Leggett & Platt's

Monroe, Georgia plant. Mathis alleged his termination was the result of discrimination because of his race, age, sex, and perceived disability under the appropriate statutory provisions. He also alleged retaliation and state law breach of contract and negligent hiring claims.[1] The company claims it fired Mathis for violating its no fault absentee policy, under which Mathis accrued five months of less than 92% attendance within seven months' time. The district court, adopting the magistrate court's report and recommendation, held that Mathis did not adduce evidence of similarly situated employees who had been treated more favorably than Mathis under the company's attendance policy. For the reasons that follow, we find Mathis's arguments on appeal to be without merit and therefore affirm the judgment of the district court.

## I. FACTS

Mathis is an African-American male who was forty years old at the time the company terminated his employment for accumulated violations of its attendance policy on January 23, 2004. Under the policy then in effect, a doctor's note stating that the employee was sick and unable to work would not excuse the employee

---

[1] Mathis also brought a claim for employer contributions to his 401(k) plan under ERISA, but he has not appealed the district court's grant of summary judgment against him on this claim. Although Mathis was successful at summary judgment on his breach of contract claim for accrued vacation time, summary judgment was granted for the company and against Mathis on all the claims at issue on appeal.

under the attendance policy. The policy provided for termination if an employee's attendance fell below 92% in any four months within a twelve month period. The policy called for an oral warning after the first month fell below 92%, a written warning after the second, a final written warning after the third, and termination after a fourth month of below 92% attendance within the twelve month period. Mathis's attendance percentage fell below the required 92% in five of seven months leading up to his termination: 88% attendance in July 2003; 87% in September 2003; 55% attendance in November 2003; 78% in December 2003; and "unspecified attendance below 92%" for the month of his termination, January 2004. Because the company fell a month behind in its warnings when it failed to give Mathis a final written warning for his third month of excessive absences in November of 2003, the company gave him a free pass for November, and issued the final written warning in December, with termination following in January. Mathis does not assert that he was actually present on the days he was counted absent. Instead, in order to make out his claim for discrimination, Mathis contends that other similarly situated white, female co-workers were treated more favorably under the policy.

Prior to his termination, Mathis submitted a complaint of sexual harassment against his supervisor, Mary McGahey. After an investigation, the company could

3

neither confirm nor deny Mathis's allegations. Mathis claims he was retaliated against for having made the complaint because he was not paid "down time," which is pay for time when he is unable to use his machine due to machine malfunction. Mathis also claims he was not paid "down time" because he was discriminated against on the basis of his race. It is unclear when and how Mathis was denied "down time," and further, what kind of causal relationship existed between the denial of "down time" and his sexual harassment complaint. Mathis's "down time" claim first emerged in his response to summary judgment and was not incorporated into either of Mathis's two charges with the EEOC, his complaint, amended complaint, or joint preliminary report, nor at any point prior to his response to the company's motion for summary judgment. The court below declined to entertain allegations relating to nonpayment of "down time".

## II. DISCUSSION

We review the grant of motions for summary judgment de novo, and here we view all facts in the light most favorable to Mathis, the non-moving party. Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1199 (11th Cir. 2001). "Summary judgment is only proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1311 (11th Cir. 2001).

4

A.     Timeliness of Mathis's Discrimination Claims

The district court was correct to dismiss Mathis's race discrimination claim under Title VII, his age discrimination claim, and his disability discrimination claim because Mathis failed to exhaust administrative remedies prior to filing suit. These claims only surfaced in an untimely EEOC charge and do not relate back to the initial timely filing.[2]  Mathis's amendments did not "spell[] out in greater detail facts tending to demonstrate" the discrimination he alleged in his initial charge. Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970).  Therefore Mathis has not exhausted his administrative remedies prior to filing suit for discrimination on account of race under Title VII, age, or disability.  See Manning v. Chevron Chemical Co., 332 F.3d 874, 878 (5th Cir. 2003) ("Generally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination.").  Nor are these claims within the scope of Mathis's timely filed EEOC charge.  See Gregory v. Ga. Dept. of Human Resources, 355 F.3d 1277, 1279-80 (11th Cir. 2003).  Mathis's claim of race discrimination under 42 U.S.C. §

---

[2] In his original charge, Mathis only checked the box for discrimination on the basis of "sex."  His factual statement recounted that he was terminated for excessive absenteeism despite possessing doctor's excuses for the absences.  He also stated that he had suffered sexual harassment at the hands of his supervisor, McGahey, had complained about her behavior, but had been told that he did not have sufficient evidence against her.  His amended charge included allegations of retaliation for having filed the sexual harassment complaint and that he was terminated because of his sex, race, and perceived disability.  He checked the boxes for sex, race, retaliation, age, and disability in the later filed amended charge.

1981 survives despite Mathis's untimely Title VII race discrimination charge because § 1981 actions are not subject to the administrative exhaustion requirement. We will assume arguendo that Mathis's retaliation claim relates back to his original charge.

### B.  Mathis's Remaining Discrimination Claims

In order to survive summary judgment on Mathis's remaining claims for sex discrimination and retaliation under Title VII and race discrimination under 42 U.S.C. § 1981, Mathis must demonstrate that there is a genuine issue of material fact as to whether his employer acted with discriminatory or retaliatory intent in his termination. Hawkins v. Ceco Corp., 883 F.2d 977, 980-81 (11th Cir. 1989). Because direct evidence of discrimination rarely exists, plaintiffs ordinarily demonstrate discriminatory intent by establishing a prima facie case under the framework set out initially in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Here, Mathis has not alleged that he has direct evidence of discriminatory intent; he has proceeded under a prima facie case framework on each of his claims.

#### 1.  Mathis's sex discrimination claim

Mathis asserts that he was discriminated against on the basis of his sex

because he was disciplined for excessive absences when other, female co-workers received excused absences and were not similarly punished. In order to establish a prima facie case for sex discrimination under Title VII, Mathis must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the job in question; and, (4) he was treated less favorably than other "similarly situated" employees outside of his protected class.[3] Holifield, 115 F.3d at 1562. The only prong in this analysis that the parties argued on appeal is the last: whether Mathis was treated less favorably than other "similarly situated" female employees.

When evaluating "similarly situated" comparators in the disciplinary context, the "most important factors" are "the nature of the offenses committed and the nature of the punishments imposed." Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998), modified by 151 F.3d 1321 (11th Cir. 1998). We agree with the magistrate court's well reasoned analysis and similarly find that Mathis has not pointed to similarly situated comparators who were treated more favorably under the attendance policy than he. Mathis relies on the attendance

---

[3] There are other ways to establish a prima facie case of discrimination, but Mathis has chosen to proceed under the "similarly situated" comparators prima facie analysis. See Hawkins, 883 F.2d at 982, 984-85 (discussing alternate methods of establishing a prima facie case, including the "similarly situated" analysis, use of statistical proof of a pattern of discrimination, and by demonstrating that the plaintiff was fired and was replaced by a person outside of his protected class).

records of three white, female co-workers to support his claims: Amy Stewart, Tammy Tiller, and Rhonda Scruggs. However, the magistrate court found that none of these women violated the policy in five of twelve months like Mathis, and therefore they cannot not serve as "similarly situated" comparators. Mathis has failed to demonstrate that any other female co-worker accrued similar absence violations and yet received different punishment. He therefore has not created a genuine issue of material fact to preclude summary judgment.

### 2. Mathis's retaliation claim

Mathis also asserts that he was fired in retaliation for complaining about the sexual harassment he experienced from his supervisor. To prove retaliation under Title VII, Mathis must demonstrate that (1) he "engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." Gregory, 355 F.3d at 1279 (quoting Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997)). The only one of these prongs at issue here is the third, whether there is a causal relationship between the protected activity–complaining about McGahey–and Mathis's termination over five months later.

Mathis does not have to establish a causal relationship that would rise to the level of direct evidence, but he must demonstrate that his internal complaint and his

ultimate termination are "not wholly unrelated." Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985). Temporal proximity may establish a causal relationship between protected activity and an adverse action, but here more than five months elapsed between Mathis's complaint on August 17, 2003 and his termination on January 23, 2004. There can be no inference of causation on the basis of these two distant events alone. See Wascura v. City of South Miami, 257 F.3d 1238, 1245 (11th Cir. 2001) (three and a half month gap too remote to prove causation through temporal proximity). Furthermore, the reason for firing Mathis is clearly his subsequent, post-complaint violations of the company's attendance policy.[4]

### 3. Mathis's race discrimination claim under § 1981

Mathis's final claim is for race discrimination under § 1981, which follows the same framework as discussed above for a discrimination claim under Title VII. Howard v. B.P. Oil Co., 32 F.3d 520, 524 n.2 (11th Cir. 1994). To the extent that Mathis's race discrimination claim relies on the same set of allegedly similarly situated comparators used to establish his claim for sex discrimination, his race

---

[4] To the extent that Mathis raises his "down time" claim as evidence of retaliation, we reject this argument because it was untimely before the district court and there is no evidence of any causal relationship between withheld down time and Mathis's sexual harassment complaint.

discrimination claim also fails for the reasons discussed above. Mathis also argues that because he was not promptly paid his accrued vacation time upon termination that he was discriminated against on the basis of his race.[5] However, any delay Mathis suffered in receiving his accrued vacation time was not a sufficiently adverse action to state a claim for race discrimination under § 1981. See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 589 (11th Cir. 2000) (holding that employer's delay in processing employee's visa application was not adverse action). Thus, Mathis's § 1981 vacation pay claim also fails.[6]

C.    Mathis's State Law Claims

Lastly, Mathis challenges the district court's entry of summary judgment on his state law negligent hiring and retention claim and its entry of judgment on his accrued vacation time claim without consideration of consequential damages. Because Mathis demonstrated no evidence of disputed fact that the company did not follow its internal policy to promptly investigate his sexual harassment complaint, and because again Mathis relies on his untimely "down time" claim as

---

[5] Mathis also contends that he was owed another week's worth of accrued vacation time under the company's collective bargaining agreement; he claims he was owed three weeks, instead of two weeks time. This argument is without merit because Mathis neither cumulatively nor consecutively worked at the company for ten years, the required time for an employee to accrue three weeks of vacation time.

[6] Mathis's "down claim" claim raised here as part of his § 1981 claim was not timely brought before the district and magistrate courts and we similarly do not address it here.

10

evidence of continued harassment, we agree with the magistrate court's recommendation to grant summary judgment on plaintiff's negligent retention claim.  See Ashmore v. J.P. Thatcher Co., Inc., 303 F. Supp. 2d 1359, 1375 (M.D. Ga. 2004).  Lastly, because under Georgia law the proper measure of damages for delay in performance would be the interest on use of the property withheld and because Mathis was paid the interest owed him, he has no further remedy under Georgia law on his vacation pay claim.[7]  See Sanders v. Robertson, 196 Ga.App. 739, 739, 397 S.E.2d 26, 27 (1990) ("[F]or delay in the performance of a contract, damages usually are for loss of the use of the property involved, for which the injured party may recover damages based on interest on the value of the property.").

### III.  CONCLUSION

For the foregoing reasons the judgment of the district court, which adopted the magistrate court's report and recommendation, is

**AFFIRMED.**

---

[7] Mathis argues that he is entitled to $15.92 per hour accrued vacation time, instead of $13.42, but his brief articulates no basis for this increased hourly rate.  We assume that this increased rate is based on Mathis's assertion that he had worked at the company for ten years, but this assertion was disproved by Mathis's own admission.